IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| J. LESTER ALEXANDER, III, ) <br> Acting in his capacity as Trustee of ) <br> Southeastern Stud and Components, Inc., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> KENNON WHALEY, ERIC LAMBERT, ) <br> MSSES HOLDINGS, LLC, and THE MILL ) <br> STEEL COMPANY, ) <br> ) <br> Defendants. ) | Case No.: 2:16-cv-00921-WHA-CSC <br> (WO) |

**MEMORANDUM OPINION AND ORDER**

**I.  INTRODUCTION**

This cause is before the court on a Motion to Remand, (Doc. # 16), filed on December 22, 2016 by the Plaintiff, J. Lester Alexander, III, acting in his capacity as Trustee of Southeastern Stud and Components, Inc. ("Trustee").

Trustee originally filed a Complaint in this case in the Circuit Court of Montgomery County, Alabama on October 24, 2016 (Doc. # 1). The Complaint includes state-law claims for breach of fiduciary duties of care, good faith, and loyalty against Defendant Kennon Whaley ("Whaley") (Count I) and against Defendants Eric Lambert ("Lambert"), MSSES Holdings LLC ("MSSES"), and The Mill Steel Company ("Mill Steel") (collectively, the "Mill Steel Defendants") (Count II).

On November 28, 2016, the Mill Steel Defendants timely removed the case to this court on the basis of two separate and independent grounds: (i) diversity jurisdiction, alleging that the individual Defendant Whaley, a resident of the State of Alabama, had been fraudulently joined as

a defendant and (ii) bankruptcy jurisdiction under 28 U.S.C. § 1334 because it relates to pending bankruptcy proceedings. For reasons to be discussed, the Motion to Remand is due to be GRANTED.

## II.  MOTION TO REMAND STANDARD

Federal courts are courts of limited jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (1994); *Wymbs v. Republican State Exec. Comm.*, 719 F.2d 1072, 1076 (11th Cir. 1983), *cert. denied*, 465 U.S. 1103 (1984). As such, federal courts only have the power to hear cases that they have been authorized to hear by the Constitution or the Congress of the United States. *See Kokkonen*, 511 U.S. at 377. Because federal court jurisdiction is limited, the Eleventh Circuit favors remand of removed cases where federal jurisdiction is not absolutely clear. *See Burns*, 31 F.3d at 1095.

## III.  FACTS

Trustee alleges the following facts:

This controversy allegedly stems from a series of breaches of fiduciary duties owed to Southeastern Stud and Components, Inc. ("Southeastern Stud").

Southeastern Stud, a corporation incorporated under the laws of the State of Alabama, was in the business of converting raw steel into a variety of building components. From the time of its formation, Whaley, Southeastern Stud's principal shareholder and a citizen of Alabama, served as its president, chief executive officer, and a member of its board of directors.

One of Southeastern Stud's raw steel suppliers was Mill Steel, a corporation incorporated and with its principal place of business in Michigan. Beginning in October of 2011, Whaley, on behalf of Southeastern Stud, entered into an agreement with Mill Steel to purchase a limited quantity of raw steel on credit. In exchange, Southeastern Stud entered into a security agreement

with Mill Steel, which secured three of Southeastern Stud's deposit accounts as collateral. On October 23, 2013, in a new credit agreement (the "Credit Agreement"), Southeastern Stud, Whaley, and certain "Affiliates" granted Mill Steel additional collateral, and Whaley personally guaranteed Southeastern Stud's obligations secured by pledging to Mill Steel all of his common stock in Southeastern Stud.

Between January 1 and August 30, 2014, there was a series of disputes between Southeastern Stud and Mill Steel and its wholly owned subsidiary, Steel Plus. Whaley, on behalf of Southeastern Stud, became concerned with the quantity, quality, and timeliness of delivery of the raw steel coming from Mill Steel's subsidiary, Steel Plus. Meanwhile, Lambert, a citizen of the State of Michigan, acting on behalf of Mill Steel, criticized Southeastern Stud for failing to promptly pay its invoices.

In late July and into August, there was a series of negotiations between Whaley and Lambert, apparently acting simultaneously on behalf of Mill Steel and its wholly owned subsidiary, Steel Plus, in which Lambert advised Whaley and other representatives of Southeastern Stud that no further inventory would be delivered by them and Mill Steel would declare a default, unless a large payment was delivered to Steel Plus. It was then agreed that Southeastern Stud would obtain funding and pay not less than $800,000 on outstanding invoices owed to Steel Plus and that Steel Plus would release certain inventory to Southeastern Stud, with Mill Steel granting certain credit accommodations under a restructuring agreement. Southeastern Stud then delivered approximately $800,000 to Steel Plus on or about August 20, 2014, but Mill Steel and Steel Plus did not execute the proposed restructuring agreement.

On October 24, 2014, Mill Steel declared a default under the October 23, 2013 Credit Agreement, and Mill Steel, acting through another controlled entity, MSSES Holdings, LLC, to

which Mill Steel had assigned the indebtedness of Southeastern Stud and its security, exercised its assigned right to vote Whaley's shares of Southeastern Stud's common stock. Doing so, it removed all members of Southeastern Stud's Board of Directors (the "Board"), reduced the size of the Board to one member, and appointed Lambert to serve in that role.

Immediately following his appointment as sole member of the Board, Lambert appointed himself President and Secretary, shut down all operations of Southeastern Stud, terminated all of its approximately eighty employees, and filed for Chapter 11 bankruptcy. Then, while being Southeastern Stud's only officer and director, Lambert began inducing its former sales personnel, whom he had terminated, to come to a Mill Steel subsidiary, Steel Structural, of which he also served as a member of the board of directors, and to sell products to the same customers served by Southeastern Stud.

On December 4, 2014, Alexander was appointed to serve as Southeastern Stud's Chapter 11 Trustee. He employed an outside consultant. The consultant concluded that Southeastern Stud could have been made into a successful business if it had been restructured before all its employees had been terminated and its operations were shut down, but that it could no longer be revived. Equipment used by Southeastern Stud was then repossessed by its leasing company and transferred to Mill Steel or a subsidiary. It was then purchased by Mill Steel or its subsidiary, Steel Structural, at an auction for substantially less than fair market value. Steel Structural, employing the business model, equipment, and former sales staff of Southeastern Stud, and servicing its customers, then generated significant profits, while Southeastern Stud, deprived of its operations and employees, was rendered insolvent and its Chapter 11 bankruptcy was converted to a liquidation under Chapter 7. Investigation disclosed that for several years Whaley had been "looting" cash reserves from Southeastern Stud for the benefit of himself or affiliates,

impairing Southeastern Stud's operating capital and impairing its ability to operate and pay its obligations timely.

## IV.  THE CLAIMS

The Complaint contains two counts. Count I is a claim against Whaley for Breach of Fiduciary Duties. Count II, similarly, is a claim against Lambert and other Mill Steel Defendants for Breach of Fiduciary Duties.

The claim against Whaley is based on his alleged looting of cash reserves of Southeastern Stud. The claim against Lambert, acting on behalf of Mill Steel, claims that he took over Southeastern Stud and presided over the elimination of operations and destruction of Southeastern Stud's business, rather than rehabilitating it, for the benefit of Mill Steel and Steel Structural and in violation of his fiduciary duties to Southeastern Stud.

## V. DISCUSSION

The Mill Steel Defendants removed this case from state to federal court based on federal diversity jurisdiction under 28 U.S.C. § 1332 and "related to" jurisdiction under 28 U.S.C. § 1334. Trustee argues in its Motion to Remand that the court lacks diversity jurisdiction and that, even if the court has related to jurisdiction, it is required to abstain from hearing this case. (Doc. # 16). Each of these arguments will be addressed in turn.

### A.  Diversity Jurisdiction

First, Trustee argues in its Motion to Remand that removal is improper because diversity of citizenship is lacking, as the bankrupt, Southeastern Stud, and the Defendant Whaley are both citizens of Alabama. (Doc. # 16). The Mill Steel Defendants respond that Whaley's citizenship should be ignored, because the Trustee fraudulently joined Whaley to this action for purposes of defeating diversity jurisdiction.

5

"Except as otherwise expressly provided by Act of Congress," a defendant may remove from state court any civil case that could have originally been brought in federal court. 28 U.S.C § 1441(a). District courts have original jurisdiction over civil actions where the amount in controversy exceeds $75,000 and the action is between citizens of different states. 28 U.S.C. § 1332. "Diversity jurisdiction requires complete diversity; every plaintiff must be diverse from every defendant." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998).

If joinder of a non-diverse defendant is "fraudulent," then removal may still be appropriate. *Id.* "To establish fraudulent joinder, 'the removing party has the burden of proving [by clear and convincing evidence] that either: (1) there is no possibility that the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court.'" *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011) (alteration in original) (quoting *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997)). In a third situation, joinder may be fraudulent "where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant." *Triggs*, 154 F.3d at 1287.

The Mill Steel Defendants argue for the third type of fraudulent joinder: fraudulent misjoinder. They argue that there is "no 'common question of law or fact' here, because the Complaint itself does not say anything about 'judging' the two different sets of defendants 'according to the contribution to the demise of Southeastern.'" (Doc. # 18, p. 15). They argue that the Trustee's Complaint presents claims against Whaley that are wholly separate from, and unrelated to, those related to the Mill Steel Defendants. *Id.*

The Trustee responds, however, that the Mill Steel Defendants misread the Trustee's Complaint. (Doc. # 19, p. 6). Specifically, Trustee submits that the "Original Complaint asserts that the breaches of the fiduciary duties by Whaley and the Mill Steel Defendants constitute a series of transactions or occurrences which caused a single injury, the insolvency of Southeastern Stud and the destruction of its business." *Id.*

The court agrees with Trustee that this case should be remanded to the state court because no fraudulent misjoinder occurred. Fraudulent misjoinder depends upon whether joinder was proper under Rule 20 of the Federal Rules of Civil Procedure. Even if joinder is improper, "mere misjoinder" under Rule 20 is not sufficient for a finding of fraudulent misjoinder. *See Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996). Rather, for a joinder to be adjudged a fraudulent misjoinder, the misjoinder must have been "egregious." *Id.*

Trustee's joinder of Whaley was proper under Rule 20. Rule 20(a)(2) provides that persons "may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, *severally*, or in the alternative with respect to or arising out of the same transaction, occurrence, or *series of transactions or occurrences*; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20 (emphasis added).

As noted previously, the Eleventh Circuit has stated that fraudulent misjoinder occurs "where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant." *Triggs*, 154 F.3d at 1287. Here, Trustee asserts breach of fiduciary duty claims against both Whaley and the Mill Steel Defendants, based on different actions, with the same end result: the destruction of Southeastern Stud. A jury will have to consider facts involving a "series of transactions or occurrences,"

7

involving "common questions of law or fact," Fed. R. Civ. P. 20, and it cannot be said that the claim against the Mill Steel Defendants "has no real connection to the claim against the nondiverse Defendant," Whaley. *See Triggs*, 154 F.3d at 1287. Therefore, the court finds that there was no misjoinder.

Even if, however, it could be said that there was a misjoinder under Rule 20, the Mill Steel Defendants would not have carried their burden to show, by clear and convincing evidence, *see Parks v. New York Times Co.*, 308 F.2d 474, 478 (5th Cir. 1962); *Brooks v. Paulk & Cope, Inc.*, 176 F. Supp. 2d 1270, 1274 (M.D. Ala. 2001) that the misjoinder was "egregious." *Triggs*, 154 F.3d at 1289.

Therefore, the court finds that Whaley was not fraudulently joined as a defendant, that there is no complete diversity of citizenship, and that the court has no federal diversity jurisdiction.

### B.  Related to Jurisdiction

The Mill Steel Defendants also assert in their Notice of Removal that this court has "related to" jurisdiction pursuant to 28 U.S.C. § 1334. (Doc. # 1). The Trustee argues in his Motion to Remand that, while the court does have related to jurisdiction, the court cannot entertain the matter because 28 U.S.C. § 1334(c)(2) "requires that the Court abstain from exercising its jurisdiction and remand the Trustee's Original Complaint to state court." (Doc. # 16, p. 17).

28 U.S.C. § 1334(c)(2) provides that (1) upon timely motion of a party (2) in a proceeding based upon a State law claim or State law cause of action, (3) related to a case under title 11 but not arising under title 11 or arising in a case under title 11, (4) with respect to which an action could not have been commenced in a court of the United States absent jurisdiction

8

under this section, the district could *shall* abstain from hearing such proceeding if (5) an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction. If all five of these elements are met, and the case is not a "core proceeding," the court must abstain from hearing this case. *See Walker v. Commercial Credit Corp.*, 192 B.R. 260, 267–68 (M.D. Ala. 1996); *see also Christo v. Padgett*, 223 F.3d 1324, 1331 (11th Cir. 2000) (finding mandatory abstention applies in cases removed from state court under 28 U.S.C. § 1452).

The Mill Steel Defendants do not dispute that Trustee can show elements (1) and (2), and, indeed, the court finds that they are met. First, the Trustee made a timely motion to remand. Second, the Trustee's claims for breach of fiduciary duties are based upon state law, with no federal cause of action, and do not arise under bankruptcy law. Therefore, elements (1) and (2) are satisfied.

However, the Mill Steel Defendants argue that Trustee cannot meet elements (3), (4), and (5). As to the third element, they argue that it is not met because this case is a "core proceeding." The third element requires that the case "[relate] to a case under title 11 but not [arise] under title 11 or [arise] in a case under title 11." 28 U.S.C. § 1334(c)(2). The Mill Steel Defendants contend that the Trustee's breach of fiduciary duties claims arise in Title 11 because those claims, while not expressly created by Title 11, would have no "practical existence" but for Southeastern Stud's bankruptcy, (Doc. # 18, p. 22), and therefore ought to be considered "core proceedings" under Title 11. The court disagrees.

"Core proceedings" are not only those proceedings which would not exist in law but-for the Bankruptcy Code, but also include cases of "arising in" jurisdiction, which covers claims that "are not based on any right expressly created by Title 11, but nevertheless, would have no existence outside of the bankruptcy." *Baker v. Simpson*, 613 F.3d 346, 351 (2d Cir. 2010)

9

(citations omitted). The Mill Steel Defendants contend that this applies here because the claim against them is based on actions taken after the Chapter 11 petition was filed. The court does not agree. That claim is based on action taken on October 24, 2014, ending with the petition filed on that day. Actions taken before that and actions taken after that, but before appointment of the Trustee, may be relevant to show the motive of taking over Southeastern Stud, firing its employees, and bankrupting the corporation, but it is the taking over of the corporation, firing its employees, and petitioning for bankruptcy, rather than attempting to rehabilitate it, that is the gravamen of the breach of fiduciary claim. Therefore, this case is not a core proceeding. It relates to, but does not arise under or in the bankruptcy proceeding.

Next, the Mill Steel Defendants argue that the Trustee cannot meet the fourth element. The fourth element requires the case to be one "with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section." 28 U.S.C. § 1334(c)(2). They argue that this element is not met because the case could have been brought in this court pursuant to diversity jurisdiction.

However, as previously explained, this court does not have diversity jurisdiction over this case because there is not complete diversity of citizenship as between Southeastern Stud and Whaley—and Whaley was not fraudulently misjoined in this action. Accordingly, there are no independent grounds for this court to exercise jurisdiction aside from those provided for under § 1334(b)(2), "related to" jurisdiction. Therefore, the fourth element is met.

Finally, the Mill Steel Defendants argue that the fifth element, which requires abstention if "an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction," is not met. *See* 28 U.S.C. § 1334(c)(2). They contend that the Trustee's Complaint amounts to a collateral attack on the findings of the Bankruptcy court in an adversary proceeding

10

involving a security agreement encumbering three bank accounts, pre-petition. They contend that this would require the state court to deal with complex issues which would be resolved in a more timely manner by the Bankruptcy Court. The court disagrees, because the case which will be before the state court will focus on breaches of fiduciary duties by the Mill Steel Defendants after taking control of Southeastern Stud, culminating in the bankruptcy filing, regardless of whether an earlier security agreement was valid.

The court finds that abstaining from hearing this case and remanding it back to the Montgomery County Circuit Court will result in its timely adjudication. The fifth element is met. Because all five elements of § 1334(c)(2) are met, this court must abstain from exercising jurisdiction over this case.

## VI.  CONCLUSION

For reasons discussed, the court concludes that it lacked subject matter jurisdiction at the time of removal because there was no fraudulent misjoinder of the nondiverse Defendant, and even if there is related to jurisdiction, mandatory abstention is required.

Accordingly, because the Eleventh Circuit favors remand where federal jurisdiction is not absolutely clear, it is hereby ORDERED that the Motion to Remand (Doc. #10) is GRANTED. It is further ORDERED that Defendants' Motion for a Directed Reference to the United States Bankruptcy Court for the Middle District of Alabama, (Doc. # 5), which was previously held in abeyance until resolution of this Motion to Remand, is DENIED as moot.

All other pending motions are left for disposition by the state court.

The Clerk is DIRECTED to take the necessary steps to remand this case to the Circuit Court of Montgomery, Alabama.

DONE this 21st day of February, 2017.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE